IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION


RICHARD OWEN LONG,                    :

        Plaintiff,                    :

vs.                                   :    CIVIL ACTION 13-0447-KD-M

DR. RICHARD THOMASON, JR.,            :
*et al.*,
                                      :
        Defendants.


REPORT AND RECOMMENDATION


        Plaintiff, who is proceeding *pro se,* filed a Complaint and

a Motion to Proceed Without Prepayment of Fees under 28 U.S.C. §

1915 ("Motion").  (Docs. 1, 5).  Plaintiff's Motion, which has

been referred to the undersigned for appropriate action pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(1), requires

the Magistrate Judge to screen Plaintiff's action pursuant to 28

U.S.C. § 1915(e)(2)(B).  *Troville v. Venz,* 303 F.3d 1256, 1260

(11th Cir. 2002)(applying § 1915(e) to non-prisoner actions).[1]

---

[1] Section 1915(e)(2)(B) provides:

        (2)  Notwithstanding any filing fee, or any
        portion thereof, that may have been paid,
        the court shall dismiss the case at any time
        if the court determines that --
                (A)  the allegation of poverty is
                untrue; or
                (B)  the action or appeal -
                        (i) is frivolous or malicious;

After screening the action, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because the clams are either frivolous or fail to state a claim upon which relief may be granted.[2]

I.  <u>Complaint</u>. (Doc. 1).

Plaintiff lists several bases for the Court's jurisdiction, namely, 28 U.S.C. §§ 1331, 1343; 42 U.S.C. §§ 291, 1981, 1983, 1985, 2000d, *et seq.*, 12131; 18 U.S.C. §§ 1001, 1201, 1506; and 5 U.S.C. § 552.  (Doc. 1 at 2).  In addition, he lists numerous persons as Defendants, namely, Dr. Richard C. Thomason, Jr., Dr. Wesley L. Spruill, Dr. Kamal K. Raisani, Dr. Jovencio Delos Reyes, Moundville Health & Rehab Administrator Adam Madison, and Moundville Police Chief Kenneth Robertson.[3]  (*Id.*).

_____

            (ii) fails to state a claim on
            which relief may be granted; or
            (iii) seeks monetary relief
            against a defendant who is immune
            from such relief.

[2] Prior to the Court conducting the statutorily required screening, Defendant Adam Madison filed a Motion to Dismiss (Doc. 3), which is rendered MOOT by the entry of this Report and Recommendation.

[3] Moundville Health & Rehab is listed as a Defendant in the style of the action but not in the listing of Defendants found in the body of the Complaint.  However, due to the disposition of this action and the lack of allegations specifically directed to this facility, it is not necessary to determine if Plaintiff intended this facility to be a Defendant.

Plaintiff's claims arise from events that led to him living in a nursing home where he presently resides. The following is a description of his claims. On or about March 21, 2011, Defendant Thomason noted in Plaintiff's medical records that Plaintiff abused alcohol, cocaine, barbiturates, and opiates, and was a heavy smoker. (*Id.*). Plaintiff contends that this "concealed" information is "false, fictitious medical information," which resulted in Plaintiff being denied "medical treatment, care, and medication." (*Id.*). Plaintiff maintains that Defendant Thomason did not see him in any capacity, nor did Defendant Thomason investigate his medical history, which would have shown that the statements were false. (*Id.*). Plaintiff contends, "all Defendants conspired with each other to cover up the false information and even added more false information in Plaintiff's records." (*Id.*). Plaintiff did not learn about "this until November 2-11 when he started requesting medical records." (*Id.* at 3). Plaintiff seeks to make Defendants "pay all claims that D.C.H. Health Systems and Moundville Health & Rehab receive from Health Springs, Medicare, Medicaid," to be paid for his pain and suffering and for his home, and to receive "any other relief . . . [in an amount] that the Court deems just and fair." (*Id.*).

According to the attachment to the Complaint, on July 20,

2011, Plaintiff was admitted for severe chest pains, which he
said was not caused by his heart. (*Id.* at 5). Previously, in
April, 2011, the last of his seven stents was inserted. (*Id.*).
After three days, with the source of Plaintiff's pain not being
determined, he was discharged and was told to see his primary
care doctor. (*Id.*).

The next thing Plaintiff knew he was being escorted to
North Harbor Hospital in Northport, Alabama. (*Id.*). Defendant
"Raisani with D.C.H. Health Systems provided false information
knowingly to North Star E.M.T. [saying the Plaintiff] was
mentally impaired and a flight risk to get them to kidnap
[Plaintiff]." (*Id.*). Defendant Raisani threatened to commit
Plaintiff to Bryce Mental Hospital for life if Plaintiff did not
go along with the program. (*Id.*). The medications Plaintiff
had been taking for five years were stopped, which caused him to
become sick and be in severe pain. (*Id.*). On July 27, 2011,
Defendant Raisani discharged Plaintiff with no medication.
(*Id.*).

The next day, July 28, 2011, Plaintiff returned to the
D.C.H. emergency room "for severe chest pain, [and because he
was] sick, couldn't sleep, eat, [and was] vomiting[.]" (*Id.* at
6). Defendant Raisani was placed in charge of Plaintiff's care

4

again and noted in Plaintiff's records that Plaintiff had been
to North Harbor several times for drug abuse, turned away from
clinics for abuse of pain medication, had a history of cocaine
abuse, and was mentally impaired, which included a schizophrenia
diagnosis, all of which he contends were false.  (*Id.*).  He
complains that no one would help him with his pain even after he
said it was not his heart.  (*Id.*).  On July 30, 2011, he was
discharged.  (*Id.*).

On August 2, 2011, Plaintiff returned to the D.C.H.
emergency room in an attempt to be transferred to Birmingham or
to find the source of his pain.  (*Id.*).  At that point Plaintiff
was in severe pain, had lost twenty-eight pounds from July 20,
2011 to August 5, 2011, and could not sleep, eat, get up, or
walk on his left leg.  (*Id.*).  His heart was checked, and he
refused Defendant Raisani's suggestion to return to North
Harbor.  (*Id.*).  Plaintiff contacted his Healthspring
caseworker, who found Moundville Health & Rehab, where he was
admitted on August 6, 2011.  (*Id.*).  Meanwhile, Defendant
Raisani approved Defendant Spruill to be Plaintiff's pain
management doctor at the D.C.H. Spine Care Center; however,
Plaintiff has never seen by him.  (*Id.* at 6).

Upon arrival at Moundville Health & Rehab, Defendant

Administrator Madison told Plaintiff that he must participate in twenty-one days of physical therapy according to their doctor, Defendant Jovencio Delos Reyes, who was now Plaintiff's doctor. (*Id.*). After fourteen days, Plaintiff could not walk or get out of bed and his left shoulder was locked up. (*Id.*). He was told that he needed to exercise his right shoulder, but he told them it was fine. (*Id.*). After two months, Plaintiff saw Defendant Reyes, who informed Plaintiff that he was not Plaintiff's pain management doctor, as D.C.H. records showed that Defendant Spruill was his pain doctor. (*Id.*). Defendant Reyes ordered NSAIDs for pain medication, which caused him to go to the emergency room three times because he cannot take that type of medication. (*Id.*).

On January 24, 2012, Plaintiff refused to leave the hospital until the source of his pain was discovered. (*Id.*). The hospital administrator told Plaintiff that he would have Plaintiff locked up if Plaintiff did not return to the nursing home. (*Id.*).

Then, after eight months, Defendant Spruill agreed to see Plaintiff. (*Id.*). Dr. Spruill did not find anything wrong with Plaintiff's back, refused to treat Plaintiff for pain, and recommended Plaintiff stay in the nursing home for the rest of

his life where he would be monitored for illicit drug use due to Plaintiff's prior opioid misuse and illicit drug use. (*Id.*). This recommendation had been previously conveyed to Defendants Madison and Reyes. (*Id.*). Plaintiff contends that Defendant Spruill performed "all the x-rays and tests to get 'paid first[,]'" and that "afterwards every doctor would deny treatment and proper care." (*Id.*).

Subsequently, Plaintiff ordered his medical records, which he caught Defendant Madison opening and copying. (*Id.*). Plaintiff reported this to the Moundville police department complaining to them that his state and federal privacy rights were being violated. (*Id.*). Defendant Police Chief Robertson "came, but he did not talk to [Plaintiff] and refused to take a report from [Plaintiff]." (*Id.*). Defendant Madison told Defendant Robertson that Plaintiff was mentally impaired due to drug use and was just trying to leave to get drugs. (*Id.* at 7-8). Plaintiff's other attempts to contact Defendant Robertson and other local governmental officials were unsuccessful. (*Id.* at 8).

After ten months, at Plaintiff's insistence, Dr. Harrell removed Plaintiff's gallbladder. (*Id.*). He told Plaintiff that it "was dangerously inflamed and oozing." (*Id.*). Nonetheless,

at the time of the Complaint's filing, Plaintiff was still in pain and was still being denied proper treatment and care. (*Id.*).  Furthermore, on October 8, 2012, Defendant Reyes ordered an MRI of Plaintiff's back and right hip, which resulted in a finding of mild arthritis.  (*Id.*).  Plaintiff received the report two months later.  (*Id.*).

Plaintiff claims that Defendant Madison and Defendant Reyes submitted false information to Medicaid, Medicare, and Social Security in order to become the payee for his checks and to receive "payment for medical services for [him] to be [t]here." (*Id.* at 9).  In summarizing his Complaint, Plaintiff states, "The crust (sic) of this entire event was over $30 worth of pain medications that destroyed [his] life, [his] home, and personal property.  They cost Healthspring, Medicaid, Medicare, and who[m]ever else they got money from thousands of dollars. Thereby, the only winners [are] D.C.H. Health Systems and Moundville Nursing Home, because [his] conditions are worse." (*Id.* at 9).

Attached to the Complaint are selected medical records corresponding to dates mentioned in the Complaint.  (Doc. 1-1 at 1-7).

II.  <u>Standards of Review Under 28 U.S.C. § 1915(e)(2)(B)</u>.

8

Because Plaintiff is proceeding *in forma pauperis*, the Court is reviewing the Complaint (Doc. 1) under 28 U.S.C. § 1915(e)(2)(B). Under § 1915(e)(2)(B)(i), a claim may be dismissed as "frivolous where it lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).[4] A claim is frivolous as a matter of law where, *inter alia,* the defendants are immune from suit, *id.* at 327, or the claim seeks to enforce a right that clearly does not exist. *Id.*

Moreover, a complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). To avoid dismissal for failure to state a claim upon which relief can be granted, the allegations must show plausibility. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise

---

[4] The frivolity and the failure-to-state-a-claim analysis contained in *Neitzke* was unaltered when Congress enacted 28 U.S.C. § 1915(e)(2)(B) in 1996. *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir.), *cert. denied,* 534 U.S. 1044 (2001). However, dismissal is now mandatory under § 1915(e)(2)(B). *Id.* at 1348-49.

a right to relief above the speculative level" and must be a
"'plain statement' possess[ing] enough heft to 'sho[w] that the
pleader is entitled to relief.'" *Twombly,* 550 U.S. at 555, 557
(second brackets in original). However, "[t]hreadbare recitals
of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

When considering a *pro se* litigant's allegations, a court
gives them a liberal construction holding them to a more lenient
standard than those of an attorney. *Haines v. Kerner,* 404 U.S.
519, 520 (1972). A court, however, does not have "license . . .
to rewrite an otherwise deficient pleading [by a *pro se* litigant]
in order to sustain an action." *GJR Investments v. County of
Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled
on other grounds by Iqbal,* 556 U.S. 662. Furthermore, a court
treats as true only factual allegations, not conclusory
assertions or a recitation of a cause of action's elements.
*Iqbal,* 556 U.S. at 681. Moreover, a *pro se* litigant "is subject
to the relevant law and rules of court including the Federal
Rules of Civil Procedure." *Moon v. Newsome,* 863 F.2d 835, 837
(11th Cir.), *cert. denied,* 493 U.S. 863 (1989).

III. Discussion.

    A.   28 U.S.C. §§ 1331 and 1343.

Plaintiff listed numerous statutes as providing

jurisdictional bases for his claims. In this listing, 28 U.S.C. § 1331 and 28 U.S.C. § 1343 are identified. Section 1331, "in vesting jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources[.]" *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 249 (1951). The civil causes of actions over which district courts have original jurisdiction "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.[5] And § 1343 "does not create substantive rights at all, but merely provides a remedy for the violation of rights conferred by the Constitution or other statutes[.]" *Maher v. Gagne,* 448 U.S. 122, 129 n.11 (1980); *see Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero,* 426 U.S. 572, 581-82 (1976)(Section 1343 was enacted for the purpose of providing a jurisdictional basis for claims brought under § 1983).[6] Thus, no claim inherent in § 1331

---

[5] Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[6] Section 1343 provides:

> (a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
>
> (1) To recover damages for injury to his person or

and § 1343 can be advanced in this action.  These sections only
serve to provide a jurisdictional basis for a substantial federal
right that has been violated.  *Steel Co. v. Citizens for a Better
Env't,* 523 U.S. 83, 89 (1998) (holding that subject matter
jurisdiction does not exist under § 1331 when the claim "clearly
appears to be immaterial and made solely for the purpose of
obtaining jurisdiction or where such a claim is wholly
insubstantial and frivolous") (quoting *Bell v. Hood,* 327 U.S.
678, 682 (1946)).

    B.   <u>42 U.S.C. § 291</u>.

---

property, or because of the deprivation of any right or
privilege of a citizen of the United States, by any act
done in furtherance of any conspiracy mentioned in
section 1985 of Title 42;

(2) To recover damages from any person who fails to
prevent or to aid in preventing any wrongs mentioned in
section 1985 of Title 42 which he had knowledge were
about to occur and power to prevent;

(3) To redress the deprivation, under color of any
State law, statute, ordinance, regulation, custom or
usage, of any right, privilege or immunity secured by
the Constitution of the United States or by any Act of
Congress providing for equal rights of citizens or of
all persons within the jurisdiction of the United
States;

(4) To recover damages or to secure equitable or other
relief under any Act of Congress providing for the
protection of civil rights, including the right to
vote.

     . . . .

The Court will address the other statutes listed by Plaintiff, in turn. Plaintiff identifies several statutes under Title 42, namely, §§ 291, 1981, 1983, 1985, 2000d, and 12131. Section 291, which is concerned with medical facilities and research, states that:

> The purpose of this subchapter is--
>
> (a) to assist the several States in the carrying out of their programs for the construction and modernization of such public or other nonprofit community hospitals and other medical facilities as may be necessary, in conjunction with existing facilities, to furnish adequate hospital, clinic, or similar services to all their people;
>
> (b) to stimulate the development of new or improved types of physical facilities for medical, diagnostic, preventive, treatment, or rehabilitative services; and
>
> (c) to promote research, experiments, and demonstrations relating to the effective development and utilization of hospital, clinic, or similar services, facilities, and resources, and to promote the coordination of such research, experiments, and demonstrations and the useful application of their results.

42 U.S.C. § 291. On its face, this statute provides no claim that would be enforceable by Plaintiff. Moreover, Plaintiff's allegations do not support a claim consistent with this statute. The statute itself simply states the purpose of the subchapter, which consists of the statutes that follow. Consequently, Plaintiff's claim under 42 U.S.C. § 291 is frivolous.

C.  <u>42 U.S.C. § 2000d, *et seq.*</u>

Plaintiff claims a right arising under 42 U.S.C. § 2000d, *et seq.,* was violated.  Section 2000d provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  Considering the statute's requirements, Plaintiff's allegations do not state a claim based on this statute.  That is, no allegations regarding race, color, or national original are present in the Complaint, nor are there allegations of discrimination for one of these reasons.  Accordingly, a claim is not stated under 42 U.S.C. § 2000d.[7]

Added to § 2000d is "*et seq.*" ("et sequens"), which means "and the following one[.]"  Black's Law Dictionary 592 (8th ed. 2004).  This vague reference to other statutes in this subchapter cannot be addressed because the burden is on Plaintiff to plead a plausible claim.  *Twombly,* 550 U.S. at 570.  In this instance, a plausible claim is not stated when a specific statute is not identified so the Court can determine if Plaintiff's allegations would be consistent with a violation of a right created by that

_____

[7]  Defendants Madison's Motion to Dismiss states that Plaintiff is white.  (Doc. 3 at 4).

14

statute.  With respect to Plaintiff's allegations, it can only be
said that, at best, he has shown there may be a possibility of
misconduct because he has connected his allegations to a specific
right or Defendant.  However, he is required to show more than a
possibility; he is required to show that he has a plausible claim
entitling him to relief.  *Iqbal,* 556 U.S. at 679.  Having not
shown that he is plausibly entitled to relief, Plaintiff has
failed to state a claim upon which relief can be granted.

    D.  <u>42 U.S.C. § 12131</u>.

    Plaintiff also identifies 42 U.S.C. § 12131 as a basis for
one of his claims.  This section, however, merely provides
definitions, to-wit:

> As used in this subchapter:
>
> (1) Public entity
>
> The term "public entity" means--
>
> (A) any State or local government;
>
> (B) any department, agency, special purpose
> district, other instrumentality of a State or
> States or local or government; and
>
> (C) the National Railroad Passenger
> Corporation, and any commuter authority (as
> defined in section 24102(4) of Title 49).
>
> (2) Qualified individual with a disability
>
> The term "qualified individual with a
> disability" means an individual with a
> disability who, with or without reasonable

modifications to rules, policies, or
practices, the removal of architectural,
communication, or transportation barriers, or
the provision of auxiliary aids and services,
meets the essential eligibility requirements
for the receipt of services or the
participation in programs or activities
provided by a public entity.

42 U.S.C. § 12131 (Title II of the Americans with Disabilities

Act of 1990). This statute creates no right that can be

violated. It simply provides definitions for the terms used in

the subchapter addressing equal opportunities for individuals

with disabilities with respect to public services. 42 U.S.C. §

12131. Accordingly, Plaintiff's claim under this statute is

frivolous. *Iqbal,* 556 U.S. at 679.

  E.  42 U.S.C. § 1981.

  Plaintiff further alleges that 42 U.S.C. § 1981 was

violated. Section 1981 provides:

(a) Statement of equal rights

All persons within the jurisdiction of the
United States shall have the same right in
every State and Territory to make and enforce
contracts, to sue, be parties, give evidence,
and to the full and equal benefit of all laws
and proceedings for the security of persons
and property as is enjoyed by white citizens,
and shall be subject to like punishment,
pains, penalties, taxes, licenses, and
exactions of every kind, and to no other.

    . . . .

16

(c) Protection against impairment

The rights protected by this section are
protected against impairment by
nongovernmental discrimination and impairment
under color of State law.

42 U.S.C. § 1981.

Plaintiff does not refer to race in his allegations.  This
absence of a reference to race precludes him from stating a claim
under § 1981.  *Smith v. Hildebrand,* 244 F. App'x 288, 289 n.1
(11th Cir. 2007).[8]  Thus, Plaintiff has failed to state a claim
upon which relief can be granted under § 1981.  *Iqbal,* 556 U.S.
at 679.

F.   42 U.S.C. § 1983.

Plaintiff also seeks to proceed under 42 U.S.C. § 1983,
which provides:

Every person who, under color of any statute,
ordinance, regulation, custom, or usage, of
any State or Territory or the District of
Columbia, subjects, or causes to be subjected,
any citizen of the United States or other
person within the jurisdiction thereof to the
deprivation of any rights, privileges, or
immunities secured by the Constitution and
laws, shall be liable to the party injured in
an action at law, suit in equity, or other
proper proceeding for redress. . . .

_____

[8] "Unpublished opinions are not considered binding precedent,
but they may be cited as persuasive authority."  11TH CIR. R. 36-2
(2005).

17

42 U.S.C. § 1983.

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish: "(1) . . . the conduct complained of was committed by a person acting under color of state law; and (2) . . . this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor,* 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 330-31 (1986). Additionally, a plaintiff must causally connect a defendant's actions, omissions, customs, or policies to a deprivation of the plaintiff's constitutional or federal rights in order to state a claim under § 1983. *See Zatler v. Wainwright,* 802 F.2d 397, 401 (11th Cir. 1986).

Plaintiff did not refer to any Defendant as acting under color of state law or describe any Defendant as a state actor. However, in liberally construing the Complaint, the Court observes that from cases on its docket and from case law that a chief of police is typically considered to be a state actor. Thus, Defendant Kenneth Robertson will be deemed to be a state actor for the purpose of this Report and Recommendation.

The allegations connected to Defendant Robertson concern Plaintiff calling the Moundville police department complaining of his state and federal privacy rights being violated. (Doc. 1 at

7).  Plaintiff claims that Defendant Robertson came but did not talk to him, and refused to take a report from him.  (*Id.*).  Defendant Madison told Defendant Robertson that Plaintiff was mentally impaired and wanted to leave the nursing home to get drugs.  (*Id.* at 7-8).  Subsequently, Plaintiff called Defendant Robertson several times for a report and was told "if he could find a report he would bring it to me."  (*Id.* at 8).

In order to state a § 1983 claim against Defendant Robertson, Plaintiff must allege a plausible claim showing a violation of a constitutional or federal right by Defendant Robertson.  The best that the Court can determine from the allegations is Defendant Robertson did not take a report from Plaintiff for violations of *state* and *federal* privacy laws.  The allegations surrounding this failure to take a report do not suggest a claim for a violation of the Constitution or of a federal right.  That is, the allegations do not show that Defendant Robertson, the Chief of Police for the *city*, is the person to whom a complaint would be made for the privacy issue about which Plaintiff complains.  If Defendant Roberstson is indeed the person to whom a complaint may be made for a violation of a privacy law, the question then becomes whether the failure to take a report is a violation of the Constitution or a federal right.  However, the absence of information surrounding this

claim prevents Plaintiff from stating a plausible claim against Defendant Robertson. *Iqbal,* 556 U.S. at 679 (requiring a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face," which is far "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," in order for the court to draw the "reasonable inference that the defendant is liable for the misconduct alleged[]").

Furthermore, Plaintiff mentions, "all Defendants conspired with each other to cover up the false information and even added more false information in Plaintiff's records." (Doc. 1 at 3). This instance is the only time that Plaintiff referred to a conspiracy or used the word conspiracy. In order to state a conspiracy claim, a plaintiff must show more than parallel legal conduct and allege more than a bare assertion of conspiracy. *Twombly,* 550 U.S. at 556-57. A plaintiff must show with sufficient facts that "the defendants 'reached an understanding to violate his [constitutional] rights.'" *Rowe v. City of Fort Lauderdale,* 279 F.3d 1271, 1283 (11th Cir. 2002) (alteration and citation omitted); *see Twombly,* 550 U.S. at 556; *AFL-CIO v. City of Miami,* Fla., 637 F.3d 1178, 1190-91 (11th Cir. 2011). The allegations "must be placed in the context that raises the suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Twombly,* 550

U.S. at 557.  Additionally, there must be an "underlying actual denial of his constitutional rights."  *Hadley v. Gutierrez,* 526 F.3d 1324, 1332 (11th Cir. 2008) (alteration omitted).

In reviewing Plaintiff's allegations, the Court finds that his allegation of a conspiracy is vague and conclusory and lacks facts to allow the Court to draw a conclusion that a conspiracy existed among all of the Defendants, much less a conspiracy that a violated a constitutional right.  *Fullman v. Graddick,* 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that a vague and conclusory assertion of a conspiracy is due to be dismissed).  Accordingly, the Court finds that Plaintiff failed to state a conspiracy claim under § 1983.

Due to these deficiencies, Plaintiff has failed to state a claim under § 1983 in his Complaint.

G.  42 U.S.C. § 1985.

In addition, Plaintiff refers to 42 U.S.C. § 1985 as a basis for a claim.  He, however, does not refer to a specific subsection of this statute.  The language that is that is most consistent with Plaintiff's allegations is subsection 3, which provides:

> (3) Depriving persons of rights or privileges
>
> If two or more persons in any State or Territory conspire or go in disguise on the

21

highway or on the premises of another, for the
purpose of depriving, either directly or
indirectly, any person or class of persons of
the equal protection of the laws, or of equal
privileges and immunities under the laws; or
for the purpose of preventing or hindering the
constituted authorities of any State or
Territory from giving or securing to all
persons within such State or Territory the
equal protection of the laws; or if two or
more persons conspire to prevent by force,
intimidation, or threat, any citizen who is
lawfully entitled to vote, from giving his
support or advocacy in a legal manner, toward
or in favor of the election of any lawfully
qualified person as an elector for President
or Vice President, or as a Member of Congress
of the United States; or to injure any citizen
in person or property on account of such
support or advocacy; in any case of conspiracy
set forth in this section, if one or more
persons engaged therein do, or cause to be
done, any act in furtherance of the object of
such conspiracy, whereby another is injured in
his person or property, or deprived of having
and exercising any right or privilege of a
citizen of the United States, the party so
injured or deprived may have an action for the
recovery of damages occasioned by such injury
or deprivation, against any one or more of the
conspirators.

42 U.S.C. § 1985(3). To state a claim under this action, a

plaintiff must show:

> (1) a conspiracy, (2) for the purpose of
> depriving, either directly or indirectly,
> any person or class of persons of the equal
> protection of the laws, or of equal
> privileges and immunities under the laws;
> and (3) an act in furtherance of the
> conspiracy, (4) whereby a person is either
> injured in his person or property or
> deprived of any right or privilege of a

citizen of the United States.

*Childress v. UAP/GA Chem, Inc.,* 92 F.3d 1140, 1147 (11th Cir. 1996). The second element requires that there "be a conspiracy that is motivated by a racial or otherwise class-based, invidiously discriminatory animus," among other things. *Cooksey v. Waters,* 435 F. App'x 881, 883 (11th Cir. 2011) (quoting *Griffin v. Breckenridge,* 403 U.S. 88 (1971)). As discussed above, Plaintiff's conspiracy allegation is vague and conclusory, and the Complaint's allegations contain no reference to race or to a class-based animus. Due to these shortcomings, Plaintiff has failed to state a claim under § 1985(3).

H. <u>5 U.S.C. § 552</u>.

Additionally, Plaintiff refers to 5 U.S.C. § 552 as a basis for a claim. This statute, the Freedom of Information Act, contains many subsections, but not one is identified by Plaintiff to serve as a basis for a claim. Generally speaking, this "Act requires federal agencies to make records and documents publicly available upon request, subject to several statutory exemptions." *FCC v. AT&T Inc.,* 131 S.Ct. 1177, 1180 (2011). In the present action, Plaintiff has not identified a federal agency as a Defendant, nor is involvement by a federal agency reflected in the Complaint. In light of this absence and the failure to

allege facts related to a request to a federal agency, Plaintiff
has failed to state a claim under 5 U.S.C. § 552.

I. <u>Title 18 of the United States Code</u>.

The remaining statutes identified by Plaintiff are found in
Title 18 of the United States Code, which contains federal
criminal statutes. *See Hanna v. Home Ins. Co.*, 281 F.3d 298, 303
(5th Cir.)("The sections of Title 18 . . . are criminal in nature
and provide no civil remedies."),[9] *cert. denied*, 365 U.S. 838
(1961). Plaintiff claims a violation of 18 U.S.C. § 1001, which
provides "that one within the jurisdiction of any department or
agency of the United States who makes false or fraudulent
statements shall be fined or imprisoned." *Williams v.
McCausland,* 791 F. Supp. 992, 1001 (S.D.N.Y. 1992).[10] This

_____

[9] The Eleventh Circuit in *Bonner v. City of Prichard*, 661
F.2d 1206, 1209 (11th Cir. 1981), adopted as binding precedent
the decisions of the former Fifth Circuit handed down prior to
the close of business on September 30, 1981.

[10] Section 1001 states:

§ 1001. Statements or entries generally

(a) Except as otherwise provided in this
section, whoever, in any matter within the
jurisdiction of the executive, legislative,
or judicial branch of the Government of the
United States, knowingly and willfully--

(1) falsifies, conceals, or covers up by any
trick, scheme, or device a material fact;

(2) makes any materially false, fictitious,

statue, however, provides no private cause of action, which could

be enforceable by a private citizen. *Id.* (citing *Federal Sav. &*

*Loan Ins. Corp. v. Reeves,* 816 F.2d 130, 138 (4th Cir. 1987)).

The next criminal statute specified is 18 U.S.C. § 1201,

which is the federal kidnapping statute.[11]  This statute, however,

---

or fraudulent statement or representation; or

(3) makes or uses any false writing or
document knowing the same to contain any
materially false, fictitious, or fraudulent
statement or entry;

shall be fined under this title, imprisoned
not more than 5 years or, if the offense
involves international or domestic terrorism
(as defined in section 2331), imprisoned not
more than 8 years, or both. If the matter
relates to an offense under chapter 109A,
109B, 110, or 117, or section 1591, then the
term of imprisonment imposed under this
section shall be not more than 8 years.

. . . .

[11] Section 1201 provides:

§ 1201. Kidnapping

(a) Whoever unlawfully seizes, confines,
inveigles, decoys, kidnaps, abducts, or
carries away and holds for ransom or reward
or otherwise any person, except in the case
of a minor by the parent thereof, when--(1)
the person is willfully transported in
interstate or foreign commerce, regardless of
whether the person was alive when transported
across a State boundary, or the offender
travels in interstate or foreign commerce or
uses the mail or any means, facility, or
instrumentality of interstate or foreign

does not provide "a private, civil cause[] of action." *Smith v. Parker,* 2011 WL 2173772, at *1 (E.D. Ky. June 21, 2011) (unpublished).

The final criminal statute referenced is 18 U.S.C. § 1506, "which provides the criminal penalties for theft or alteration of records or process or false bail in proceedings in any court of the United States." *Shahin v. Darling,* 606 F. Supp.2d 525, 538 (D. Del. 2009), *aff'd*, 250 F. App'x 605 (3rd Cir. 2009).[12]  This

---

commerce in committing or in furtherance of the commission of the offense; . . . shall be punished by imprisonment for any term of years or for life and, if the death of any person results, shall be punished by death or life imprisonment.

.  .  .  .

[12]  Section 1506 states:

§ 1506. Theft or alteration of record or process; false bail

Whoever feloniously steals, takes away, alters, falsifies, or otherwise avoids any record, writ, process, or other proceeding, in any court of the United States, whereby any judgment is reversed, made void, or does not take effect; or

Whoever acknowledges, or procures to be acknowledged in any such court, any recognizance, bail, or judgment, in the name of any other person not privy or consenting to the same--

Shall be fined under this title or imprisoned

26

statute, however, does not provide a private, civil cause of action. *Id.* Accordingly, Plaintiff's claims based on 18 U.S.C. §§ 1001, 1201, and 1506 are frivolous.

IV.  Conclusion.

Based upon the foregoing reasons, it is recommended that this action be dismissed with prejudice, prior to service of process, pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because the clams are either frivolous or fail to state a claim upon which relief may be granted.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b); S.D. ALA. L.R. 72.4.  The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's factual findings." *Dupree v. Warden, Attorney General, State of Alabama,* 715 F.3d 1295, 1300 (11th Cir. 2011).  In order to be specific, an objection must identify the specific finding or recommendation to which

---

not more than five years, or both.

objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE this 7th day of November, 2013.

s/ BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE